Submitted on motion to dismiss appeal; motion denied June 11; submitted on briefs on the merits September 24; reversed and suit dismissed November 5, 1929

JOSE GERTRUDE DE LA MONTAYNE v. ARCHIE DE LA MONTAYNE.

(278 Pac. 580; 281 Pac. 825)

For the motion *Mr. D. E. Van Vactor.*

Contra, *Mr. F. H. Mills.*

COSHOW, C. J. ██ Plaintiff-respondent moves to dismiss the appeal in this case on the alleged ground that the transcript of evidence was not filed in time to confer jurisdiction on this court. The learned counsel for respondent has confused the transcript of evi-

dence with the transcript required under § 554, O. L., for conferring jurisdiction on this court. The appeal was perfected March 11, 1929. The transcript, sometimes called a short transcript, was filed in this court on the 5th day of April, within 30 days from the time the appeal was perfected. The filing of the other proceedings, such as the abstract of record, the transcript of testimony and briefs, are necessary to the orderly trial of the cause here but are not jurisdictional. This question, we thought, was settled for all time by the decision in *Walker v. Fireman's Fund Ins. Co.*, 122 Or. 179 (257 Pac. 701). The opinion in that case was written by Mr. Justice RAND and is an elaborate discussion of the principles involved and is a collation of the authorities in this state. In the case of *Lasene v. Syvanen*, 123 Or. 615 (257 Pac. 822, 263 Pac. 59), the same learned justice again reviews the authorities. By virtue of the decision in those two cases the motion to dismiss must be denied. No intention to abandon the appeal is manifest in the conduct of appellant. Conceding that the transcript of testimony and the abstract were filed a day late, the court is not thereby divested of its authority.

Motion to dismiss denied.

BROWN, J., absent.

ON THE MERITS
(281 Pac. 825)

REVERSED AND SUIT DISMISSED.

For appellant there was a brief over the name of *Mr. F. H. Mills.*

For respondent there was a brief over the name of *Mr. D. E. Van Vactor.*

BELT, J. This is a suit to annul a marriage on the ground of mental incapacity. No property rights nor children are involved. The parties were married at Redding, California, on January 9, 1925, and lived and cohabited together for more than two years before this proceeding was commenced. It is alleged that "as soon as plaintiff acquired sufficient mental capacity and understanding to comprehend what she had done, she immediately left the above named defendant, and since that time has not cohabited with the defendant as wife and husband, * * *." There is no allegation of fraud or duress.

We have read the transcript of evidence and conclude that plaintiff has wholly failed to establish by a preponderance of the evidence that she did not have sufficient understanding to appreciate the nature and consequence of what she was doing at the time she married the defendant. The presumption is that she was sane. It is the policy of the law to uphold the marital status and it should not be lightly set aside. It is difficult to lay down any general comprehensive test for determining the degree of mental capacity required to contract a marriage. Each case must of necessity be decided on its own facts. The best accepted test as to whether there is mental capacity sufficient to contract a valid marriage is whether there is capacity to understand the nature of the contract and the duties and responsibilities which it creates: *Coleman v. Coleman,* 85 Or. 99 (166 Pac. 47).

Looking to the record we find no unusual or suspicious circumstances surrounding this marriage. It was performed in the presence of a minister and his wife and daughter. Neither of these parties was called as a witness on behalf of the plaintiff. Her case is based wholly upon her own testimony and that of a

doctor who testified that she was a woman of highly emotional temperament, erratic, and was a "border line case." In response to the question, "Would you say she would be competent to decide on the question of marriage?" the doctor answered, "I don't know whether she would or not. That is a difficult question to answer. I think she would be competent at times on any subject, and at times I would not care to place very much confidence in her judgment." The marriage was performed about 13 months after the death of her former husband and it appears that she had sufficient mental capacity to act as administratrix of his estate. Yet she would have the court believe that she could not comprehend the nature of a simple contract of marriage.

The decree of the lower court in annulling this marriage is reversed and the suit is dismissed.

REVERSED AND SUIT DISMISSED.